UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| DENNIS CHARLES KIRKPATRICK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 16-063-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security[1], | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Dennis Charles Kirkpatrick ("Kirkpatrick") and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner"). [Record Nos. 7 and 8] For the reasons that follow, the Commissioner's motion will be granted and the relief sought by Kirkpatrick will be denied.

**I.**

On August 21, 2012, Kirkpatrick filed for a period of disability insurance benefits, alleging an onset disability date of May 20, 2011. [Tr. 160] His claim was denied initially and on reconsideration. [Tr. 106-09, 111-13] Kirkpatrick then requested an administrative hearing before an ALJ. [Tr. 114] Following the hearing, Administrative Law Judge ("ALJ") Roger L. Reynolds determined that Kirkpatrick was not disabled under the Social Security Act

---

[1]   Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

("Act"). [Tr. 22] Kirkpatrick's subsequent request for review by the Appeals Council was denied. [Tr. 2] He has exhausted his administrative remedies and this case is ripe for review pursuant to 42 U.S.C. § 405(g).

    **A.**    **Medical Records**

The administrative record includes treatment notes from Dr. Kenneth Galang beginning March 2010 and continuing through December 2013. [Tr. 280-347] Dr. Galang initially diagnosed Kirkpatrick with degenerative disc disease, cervicalgia, and muscle spasms in his neck. [Tr. 281] He prescribed 15mg of oxycodone for pain. [*Id.*] Office notes indicate that Kirkpatrick had seen a neurosurgeon who recommended conservative treatment. [*Id.*]

In December 2010, Dr. Galang noted "[w]orsening symptoms with lumbar spine and left radicular symptoms, MRI not too impressive and symptoms are more suggestive of meralgia paresthetica." [Tr. 286] Dr. Galang reiterated this observation, or a slight variation of it, in the treatment notes for each of the subsequent visits. [Tr. 286-343] He continued to prescribe the 15mg oxycodone prescription for several visits. [Tr. 286-92] Then, in March 2011, Dr. Galang prescribed 20mg oxycontin in addition to oxycodone. [Tr. 292] Kirkpatrick reported that his pain symptoms improved with exercise in April 2011. [Tr. 294] Office notes also show normal gait, normal straight leg test, normal spine tenderness, and normal range of motion. [Tr. 295] In July 2011, office notes indicated abnormalities in cervical spine tenderness, neck rigidity, and cervical range of motion. [Tr. 298]

Treatment remained unchanged for several visits over the course of the next year. [Tr. 292-311] Then, in March 2012, Dr. Galang diagnosed Kirkpatrick with carpal tunnel syndrome. [Tr. 307] Later that month, he assessed Kirkpatrick with lesion of ulnar nerve. [Tr. 311] Dr. Galang diagnosed Kirkpatrick with lumbago three months later, and prescribed

15mg MS Contin rather than oxycontin.  [Tr. 313-14]  Dr. Galang increased Kirkpatrick's oxycodone prescription to 30mg in August 2012.  [Tr. 316]

Dr. Galang continued the oxycodone and MS Contin prescriptions for several visits, then prescribed Opana ER rather than MS Contin in September 2013.  [Tr. 338]  Later in September, Dr. Galang returned to an MS Contin prescription, but increased the strength to 30mg.  [Tr. 341]  In October 2013, Dr. Galang increased the MS Contin prescription to 60mg and maintained the 30mg oxycodone prescription.  [Tr. 344]  This remained Kirkpatrick's prescription for the last office visit of record in December 2013.  [Tr. 347]

In a medical source statement obtained March 4, 2014, Dr. Galang stated that Kirkpatrick would be limited to a significantly-reduced range of sedentary work.  [Tr. 352]  The claimant would be limited to standing or walking for less than 2 hours in an 8-hour workday and that would have to periodically alternate sitting and standing to relieve pain or discomfort.  [Tr. 352-53]

On August 20, 2012, Kirkpatrick visited the emergency room, reporting back pain that had started three days prior after he had jumped off of a ladder.  [Tr. 267]  Notes discuss a history of prior back pain and ruptured discs in the neck and low back.  [*Id.*]  The physician noted that Kirkpatrick was "comfortable at rest but has severe pain when [he] sits up or moves."  [*Id.*]  The physician's impression was mild scoliosis and mild diffuse osteoarthritic with "no acute findings."  [Tr. 269]

In October 2012, Dr. Gary Stewart conducted a mental status exam of Kirkpatrick in connection with his application for disability benefits.  [Tr. 270]  Kirkpatrick reported problems managing most daily activities due to physical limitations and pain.  [Tr. 271]  According to Stewart, Kirkpatrick "displayed no problems of balance or gait as he walked

from the waiting room to the exam room.  He displayed minor problems sitting down and getting up and [] asked to lay down on the couch for part of the interview." [*Id.*]  The ultimate prognosis was "fair," and Dr. Stewart stated that Kirkpatrick's prognosis "would be considered more favorably if he was motivated for vocational rehabilitation" and "involved in a pain management program for his self-reported symptoms." [Tr. 274]

Dr. Thien Ngo examined Kirkpatrick in connection with his disability claim in October 2012. [Tr. 275]  Kirkpatrick sought disability benefits due to pain in his neck and his back, which he reported was a 9/10 in severity. [*Id.*]  The report indicated that Kirkpatrick identified as being independent in his activities of daily living. [*Id.*]  Dr. Ngo observed that Kirkpatrick's gait was normal and that the claimant was "able to rise from a sitting position without assistance, stand on tiptoes, heels and tandem walk without problems" and "able to bend and squat without difficulty." [Tr. 276]  Dr. Ngo concluded based on this examination that Kirkpatrick "should be able to sit, walk, and/or stand for a full workday with frequent and adequate breaks, lift/carry objects with limitations secondary to pain, hold a conversation, respond appropriately to questions, [and] carry out and remember instructions." [Tr. 277]

State agency medical consultant Dr. Amanda Lange concluded that Kirkpatrick had the residual functional capacity ("RFC") to perform the full range of light work. [Tr. 101]  She observed that cervical and lumbar imaging indicated degenerative disc disease without any neural compression, and that Dr. Ngo's examination was essentially negative, aside from limitations on lumbar and cervical range of motion. [*Id.*]

### B. The Administrative Hearing

Kirkpatrick was 54 years' old at the time of the administrative hearing before the ALJ and had a high school education. [Tr. 30]  He had previously been employed as a New York

City policeman, but suffered an on-the-job injury for which he received disability retirement benefits from the city.  [*Id*.]  He also had owned a sports photography business where he took pictures of children, which primarily involved still images of teams and individuals but included some action photography.  [Tr. 31-32]  However, he had not engaged in sports photography since he closed his business in 2009.  [Tr. 31, 40]  Kirkpatrick contends that he is unable to work due to herniated disks, degenerative disc disease, nerve damage, ADHD, and depression.  [Tr. 175]

Kirkpatrick lived in Florida but moved to Kentucky in 2010.  [Tr. 32]  His physician in Florida, Dr. Galang, continued to treat the claimant after he moved to Kentucky because Kirkpatrick's insurance did not recognize any participating providers in this Commonwealth. [Tr. 32-34]  Kirkpatrick testified that, for the six to eight months before the administrative hearing, he had been seeing Dr. Galang once a month and that he sometimes drove to see him and sometimes flew.  [*Id*.]

Kirkpatrick testified that he was required to close his photography business due to his back pain.  [Tr. 38]  Taking pictures required that he stand and squat, and despite increases in pain medication, he was unable to continue performing the work.  [Tr. 39]  According to Kirkpatrick, he could sit but would be unable to stand for two hours.  [Tr. 52-53]  He further testified that the severity of his pain varied, but that he was in pain every day.  [Tr. 58]

Kirkpatrick affirmed that he regularly visits with his mother, daughter and grandchildren in Kentucky.  [Tr. 46]  Additionally, he would occasionally go to a movie or grocery shopping with his wife.  [Tr. 47]  On his visits to Florida, Kirkpatrick typically would sit by the pool and spend time with his in-laws.  [*Id*.]

The Vocational Expert ("VE") characterized Kirkpatrick's past relevant work as a photographer light skilled work, SVP: 7. [Tr. 59] She acknowledged that, if Kirkpatrick were doing photography in the manner in which he testified, "it would be medium to heavy work." [*Id.*] She also testified that the skills that Kirkpatrick developed in his past work would only be transferable within the photography industry. [*Id.*]

### C. The ALJ Decisions

ALJ M. Dwight Evans determined that Kirkpatrick was not disabled in May 2011. [Tr. 65] Evans found severe impairments of degenerative disk disease and chronic cervical and lumbar pain without radiculopathy. [Tr. 67] He determined that the impairments did not meet or medically equal a listed impairment. [Tr. 68] Evans concluded that Kirkpatrick's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent" with his determination that Kirkpatrick possessed the RFC to perform the full range of light work. [Tr. 69] Evans ultimately found that Kirkpatrick was capable of performing his past relevant work as a photographer, owner/operator, because that work did not require the performance of activities precluded by his RFC. [Tr. 73]

In May 2014, ALJ Roger L. Reynolds also concluded that Kirkpatrick was not disabled. [Tr. 22] ALJ Reynolds first determined that the principles of *Drummond/Dennard* applied in Kirkpatrick's case after finding that there were no "material or significant changes" in the claimant's condition since Evans issued his decision. [Tr. 12] He adopted and incorporated ALJ Evans's findings regarding the medical evidence up to the point of that decision and took administrative notice of those findings and conclusions, "except where they conflict with [his]

findings of fact and conclusions of law . . . ."  [Tr. 12-13]  ALJ Reynolds then evaluated Kirkpatrick's claim and found severe impairments of chronic and low back pain secondary to degenerative disk disease of the cervical and lumbar spine with mild scoliosis of the lumbar spine.  [Tr. 15]

ALJ Reynolds determined that Kirkpatrick possessed the RFC to perform the full range of light work.  [Tr. 18]  He found that there was "insufficient evidence to support the claimant's allegations regarding the intensity and persistence of his symptoms, which he contends are disabling" because the evidence of record was "generally unremarkable and does not substantiate a finding of disability . . . ."  [Tr. 19]  ALJ Reynolds discussed the reports from Dr. Galang and from the MRIs, including the findings of degenerative disk disease, disk bulges, reduced ranges of motion, tenderness, and muscle spasms, but remarked that "despite all the documentation, there is not a lot of diagnostic expertise being applied at these visits, nor is there any significant therapeutic decision-making at these evaluations.  More or less, every visit looks the same, in terms of documentation and medical care, and no significant changes are introduced."  [*Id.*]

While ALJ Reynolds concluded that Kirkpatrick was "credible regarding the general nature of his impairments," he concluded that the claimant was "not entirely credible . . . with regard to his allegations of limitations [and] overall disability" because "the medical evidence of record noes not support such severe limitations on his physical abilities."  [Tr. 20]  Although Kirkpatrick had a history of treatment, "objective diagnostic evidence reveal[ed] only mild to moderate findings."  [*Id.*]

Further, Kirkpatrick's reported activities, including traveling to Florida, driving, shopping, and completing light household chores, were inconsistent with his claims of constant

pain and inability spend his days doing anything more than lie on the couch. [*Id.*] ALJ Reynolds gave greater weight to the findings of the State agency consultants, moderate weight to Dr. Ngo, and little weight to the treating source assessment completed by Dr. Galang. [Tr. 21] This was because Dr. Galang's opinion that Kirkpatrick was limited to a significantly reduced range of sedentary work was "inconsistent with the overall evidence of record including the claimant's reported daily activities and his monthly trips to Florida which require sitting for extended periods." [*Id.*]

ALJ Reynolds concluded that Kirkpatrick was capable of performing past relevant work as a photographer. [*Id.*] As a result, he found that Kirkpatrick was not disabled under the Social Security Act ("Act"). [Tr. 22]

## II.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the requirements of the first four steps of the process, the burden shifts to the Commissioner regarding the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments.

20 C.F.R. § 404.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment that is expected to last for at least twelve months and that meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional activity ("RFC") and relevant past work to determine whether he can perform his past work.  If he can, he is not disabled.  20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

### III.

**A.** ***Drummond/Dennard* Principles**

Kirkpatrick argues that ALJ Reynolds erred by concluding that *Drummond/Dennard* principles applied in his evaluation of Kirkpatrick's claim. These decisions hold that, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). Kirkpatrick asserts that it was error for ALJ Reynolds to state that he was bound by the conclusions and findings of ALJ Evans. Specifically, he argues that the holdings of these cases do not apply because the record reflects that his condition has worsened since the time of ALJ Evans' decision. The Court rejects this argument.

ALJ Reynolds did not err in applying *Drummond/Dennard* principles because Kirkpatrick has failed to demonstrate any significant or material changes in his condition since ALJ Evans' decision on May 19, 2011. [Tr. 65] Kirkpatrick identifies various differences in Dr. Galang's treatment after May 2011, including diagnoses of carpal tunnel syndrome, ulnar nerve lesion, lumbago, and long-term use of medication. [Tr. 306-08, 309-11, 312-14, 315-17] He also points out that Dr. Galang ordered MRIs and x-rays. [Tr. 312, 321-23] Additionally, Kirkpatrick highlights changes in the pain medications that Dr. Galang prescribed, including a change from oxycontin to morphine MS Contin in June 2012. [Tr. 314]

While Kirkpatrick cites to the above changes, he fails to explain their significance regarding his physical condition and ability to work. Kirkpatrick notes that Dr. Galang ordered various tests, but does not indicate that these tests revealed any changes. Similarly, although

Kirkpatrick was diagnosed with additional conditions, Dr. Galang's treatment remained largely unchanged.

Dr. Galang was prescribing 20mg oxycontin and 15mg oxycodone in April 2011. [Tr. 295] Although this physician was prescribing morphine rather than oxycontin and had increased the claimant's oxycodone prescription to 30mg by December 2013, Kirkpatrick does not demonstrate that this indicates a significant or material change in his condition. [Tr. 347] Other than Dr. Galang's note of "[w]orsening symptoms with lumbar spine and left radicular symptoms," [a note that he had consistently made for each visit since December 2010, Tr. 283], Kirkpatrick fails to identify any statement from Dr. Galang indicating a finding that his condition had substantially worsened, necessitating a significant change in treatment. Instead, the treatment notes reflect that Dr. Galang approached each office visit in largely the same manner, continuing to prescribe pain medication to address Kirkpatrick's symptoms, albeit in different doses. Because Kirkpatrick fails to show a significant or material change in either his condition or the treatment of that condition, he has failed to demonstrate that it was improper for ALJ Reynolds to apply *Drummond/Dennard* in his case.

Moreover, even if it were error for ALJ Reynolds to apply *Drummond/Dennard*, it appears that the error was harmless. ALJ Reynolds discusses ALJ Evans's decision in one paragraph on the first page of his decision. He states that he is bound by ALJ Evans's findings and conclusions, but then proceeds to conduct a thorough and considered analysis of the claimant's alleged disability at each stage of the analysis with very little discussion of the prior decision.[2] Rather than adopting ALJ Evans's determination regarding severe impairments,

---

[2] ALJ Reynolds appears to have only mentioned the decision on two other occasions. At step two, he notes that ALJ Evans had concluded that his impairments were not severe, and

listed impairments, RFC, or Kirkpatrick's ability to perform past relevant work, ALJ Reynolds makes each of these determinations independently after discussing the evidence in the record. Thus, ALJ Reynolds reached his conclusions based on the evidence, not on rigid application of the prior ALJ's decision. He would have reached these conclusions regardless of whether *Drummond/Dennard* principles applied. Accordingly, this assertion of error does not entitle Kirkpatrick to relief.

### B. Substantial Evidence

The claimant next argues that ALJ Reynolds's RFC determination is not supported by substantial evidence. His specific concern is that the ALJ did not assign proper weight to the opinion of the treating physician, Dr. Galang. Kirkpatrick alleges that the ALJ "[l]argely ignored" Dr. Galang's opinion. Additionally, he contends that the ALJ's rationale for discrediting Dr. Galang's opinion (i.e., that it was not consistent with the record) is not sufficiently specific to support the lesser weight that the ALJ assigned to it.

Under the treating physician rule, an ALJ is required to give a treating physician's opinion controlling weight if he finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must "always give good reasons" for the weight assigned to a treating source's opinion. *Id*. Additionally, the ALJ is required to consider factors such as the length of the treatment relationship,

---

that "the current evidence also demonstrates the claimant has no more than mild limitations" regarding his mental condition. [Tr. 15] He then discusses the evidence in detail. Likewise, after addressing Kirkpatrick's RFC for over three pages, he states that his RFC "assessment is also supported by the findings and conclusions reached by the previous adjudicator inasmuch as the claimant was limited to light exertional work as adopted herein." [Tr. 21]

frequency of examination, nature and extent of treatment relationship, supportability of the opinion, consistency of the opinion with the record, and the source's specialization. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007); 20 C.F.R. § 404.1527(c). The ALJ is required to give "good reasons" for the weight assigned to the treating source's opinion, but is not required to conduct an "exhaustive factor-by-factor analysis." *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011). The ultimate question is whether the decision "permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion . . . ." *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. 2010).

Here, the ALJ specifically addressed the weight assigned to the treating physician and gave good reasons for that determination. The ALJ discussed Dr. Galang's treatment directly. He acknowledges Dr. Galang's clinic findings of reduced ranges of motion, tenderness, and muscle spasms, but reasons that "despite all the documentation, there is not a lot of diagnostic expertise being applied at these visits, nor is there any significant therapeutic decision-making at these evaluations." [Tr. 19] Instead, "[m]ore or less, every visit looks the same, in terms of documentation and medical care, and no significant changes are introduced." [*Id*] He also notes that Dr. Galang's medical records did not "substantiate a finding of disability or further reduction of [Kirkpatrick's] residual functional capacity." [*Id*.] Specifically, Dr. Galang described Kirkpatrick's MRI as "not too impressive"; Kirkpatrick reported that his symptoms were better with exercise; his gait and station were normal; and he, at one point, reported that his overall pain was under better control. [*Id*.]

The ALJ assigned Dr. Galang's treating source assessment "little weight" because it was inconsistent with the record. [Tr. 21] Dr. Galang completed a treating source assessment

-13-

in which he opined that Kirkpatrick was limited to a significantly reduced range of sedentary work with limitations of standing/walking less than two hours and sitting two hours. [Tr. 21, 352] The ALJ found that this assessment was inconsistent with the overall evidence of record including the claimant's reported daily activities and his monthly trips to Florida which require sitting for extended periods. [Tr. 21] Earlier in his analysis, the ALJ reasoned that Kirkpatrick's ability to care for himself, complete light household chores, drive, and grocery shop indicates that he has the capacity for light exertional work. [Tr. 20] Moreover, Kirkpatrick's regular travels to Florida to obtain medical treatment are "inconsistent with [his] assertions he just lies on the couch in pain waiting for his next dose of medication." [*Id.*] Likewise, the fact that Kirkpatrick visited the emergency room after jumping off of a ladder in 2012 suggested that he was more functional than he claimed. [Tr. 20, 267]

This discussion was sufficient to provide a clear understanding of the ALJ's reasons for declining to give Dr. Galang assessment controlling weight. It is thus irrelevant that the ALJ did not address each factor specifically. Additionally, as discussed below, the information cited by the ALJ is sufficient to establish substantial evidence to support his ultimate determination regarding Kirkpatrick's entitlement to benefits.

Kirkpatrick also argues that substantial evidence does not support the ALJ's credibility determination. Kirkpatrick discusses the evidence relied on by the ALJ, such as the claimant's daily activities and his regular trips to Florida, and then argues that these activities do not indicate that Kirkpatrick possesses the capacity to perform a light range of work. Although the nature of his argument is not entirely clear, Kirkpatrick seems to contend that it was error for the ALJ to rely on the various activities to conclude that he was exaggerating with respect to his physical limitations and their impact on his ability to perform work activities. Instead,

according to Kirkpatrick, the ALJ should have relied on Kirkpatrick's own descriptions of his pain and the limitations they imposed.

There is a two-part process for assessing the credibility of a claimant's statements about his symptoms, including pain. First, the ALJ must determine whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(c). Next, the ALJ must evaluate the intensity and persistence of those symptoms and their impact on the claimant's ability to work based on factors such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors suggesting functional limitations. *Id*.

Credibility determinations relating to a claimant's subjective complaints are within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). As a result, "[c]laimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 488 (6th Cir. 2005). Courts "are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [they] do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). An ALJ's determination regarding the credibility of a claimant's subjective complaints will be upheld if there is substantial evidence to support the ALJ's determination. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

Although the ALJ concluded that Kirkpatrick was "credible regarding the general nature of his impairments," he determined that Kirkpatrick was "not entirely credible, [] particularly with regard to his allegations of limitations, overall disability, and his assertion that he is unable to perform work consistent with his residual functional capacity." [Tr. 20] The ALJ found that evidence of record, including medical evidence and Kirkpatrick's reports of his daily activities, did not support the claimant's assertions regarding the severity of his symptoms and resulting limitations. [*Id.*]

Regarding the medical evidence of record, the ALJ noted a "history of treatment for various complaints yet objective diagnostic evidence reveals only mild to moderate findings." [*Id.*] Additionally, treatment notes showed that his symptoms were treated conservatively, which was inconsistent with the severity of the pain that Kirkpatrick alleged. [*Id.*] The ALJ also observed that Kirkpatrick was able to ambulate effectively and could carry out the activities of daily living without a hand-held assistive device or companion assistance. [*Id.*] Further, Kirkpatrick was able to care for his personal needs, drive, complete light household chores, and stop in stores, and travel to Florida every month. [*Id.*] He also visited the emergency room after jumping off a ladder. [*Id.*] In short, Kirkpatrick's assertions regarding his limitations in lifting, sitting, and standing, were not supported by the medical evidence or by the record generally. [*Id.*]]

The ALJ's determination that Kirkpatrick's claims regarding the severity of his pain and the functional limitations that it imposed was not credible is supported by substantial evidence. Kirkpatrick's daily activities of caring for his personal needs, driving occasionally, visiting with family members, and shopping are inconsistent with his claim that he cannot perform light work and can do no more than lie on the couch in pain, as are his consistent trips

-16-

to Florida. [Tr. 46-47] Likewise, the fact that Kirkpatrick was climbing a ladder in 2012 is inconsistent with his assertion that he lacks the physical capability of performing light work. [Tr. 267] Next, Kirkpatrick has not reported any side effects from the medication he has been using, and he also has reported that his symptoms improve with the medication and also with exercise. [Tr. 294]

Finally, the ALJ determination is consistent with Dr. Ngo's notes, who observed that Kirkpatrick had normal gait, was able to rise from a sitting position without assistance, and could walk, bend, and squat without difficulty. [Tr. 276] Dr. Ngo thus concluded that Kirkpatrick would be able to sit, walk, and/or stand for a full workday, with adequate breaks. [Tr. 277] Similarly, the state agency medical consultant concluded that Kirkpatrick had "the residual functional capacity to perform the full range of light work." [Tr. 101] The record thus reflects substantial evidence to support the ALJ's credibility determination as well as his ultimate determination that Kirkpatrick's pain imposed limitations but it was not disabling.

### C. The Claimant's Past Relevant Work

Kirkpatrick argues that the ALJ improperly characterized his past relevant work as a still photographer, which is classified as light and skilled. According to Kirkpatrick, the job of photographer that he actually performed was medium to heavy exertion work. He contends that his position on this point was confirmed by the VE. [Tr. 59] As such, Kirkpatrick argues that his past relevant work should have been classified as requiring a medium level of exertion.

At step four of the analysis, the ALJ determines whether the claimant can perform past relevant work. The relevant inquiry at this stage is whether the claimant is still capable of performing the type of work that he had previously performed, not necessarily the specific job that he previously held. *Gowel v. Apfel*, 11 Fed. Appx. 447, 452 (6th Cir. 2001) (opining that

the regulations "concentrate on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or find one exactly like it.") (citation omitted). As a result, at this stage, the claimant "must prove an inability to return his former type of work and not just to his former job." *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); *see also Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 548 (6th Cir. 2002) (holding that the claimant "must prove that [he] is unable to perform [his] past relevant work and that [he] is unable to return to [his] former type of work as generally performed").

These case law clearly indicates that an ALJ is not required to determine that the claimant is capable of performing the exact job that he performed previously. Instead, a claimant is capable of performing past relevant work within the meaning of the regulations if he is capable of performing the type of work that he had previously performed. Here, the ALJ found that Kirkpatrick was capable of performing "past relevant work as a photographer, owner/operator." [Tr. 21] There is no dispute that the claimant previously worked as a photographer. Accordingly, the ALJ found that Kirkpatrick was capable of performing the "type of work" that he had previously performed. As a result, within the meaning of the regulations, the ALJ determined that the claimant was capable of performing past relevant work. The distinction that Kirkpatrick attempts to draw between light exertion photography work and medium exertion photography work is based on the particular job that he performed and is not relevant within the meanings of the regulations. Accordingly, Kirkpatrick's argument that the ALJ erred by characterizing his past relevant work as "light" rather than "medium" is without merit.

**IV.**

The ALJ did not err in applying the principles of *Drummond/Dennard* in concluding that there were no material changes in the claimant's condition since another ALJ's earlier determination.  However, notwithstanding this conclusion, the ALJ conducted an independent assessment of Kirkpatrick's limitations and ability to perform past relevant work in finding that the claimant was not disabled under the Act.  Substantial evidence supports the ALJ's ultimate conclusion in this regard.  Further the ALJ did not err in: (i) evaluating the opinions of Kirkpatrick's treating physician; (ii) assessing the claimant's credibility and complaints of disabling pain; or (iii) considering Kirkpatrick's past work as a photographer.  Accordingly, it is hereby

**ORDERED** as follows:

1. The Commissioner's Motion for Summary Judgment [Record No. 8] is **GRANTED**.

2. The Plaintiff's Motion for Summary Judgment [Record No. 7] is **DENIED**.

This 17th day of March, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

-20-